David C. Deal
The Law Office of David C. Deal, P.L.C.
P.O. Box 1042
Crozet, VA 22932
Tel: (434) 233-2727
Email: david@daviddeal.com

David D. Lin, Esq.
(*pro hac vice* forthcoming)
Justin Mercer, Esq.
(*pro hac vice* forthcoming)
Lewis & Lin, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Email: David@iLawco.com
         Justin@iLawco.com

*Counsel for the General Directorate of General Security*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF AMER FAKHOURY, et al., *Plaintiffs*, v. THE ISLAMIC REPUBLIC OF IRAN, *Defendant*. | Case No. 1:21-cv-01218-JDB |

**The General Directorate of General Security of Lebanon's**
**Reply Memorandum of Law in Further Support of**
<u>**Motion for Limited Invention and to Strike**</u>

The General Directorate of General Security of Lebanon ("GDGS" or "General Directorate"), a nonparty in the above-captioned action by and through its attorneys, hereby submits this reply memorandum in further support of its motion for limited intervention to strike impertinent allegations in Plaintiffs' Complaint (the "Motion").

1

## ARGUMENT

**A. A determination on intervention is unnecessary given Plaintiffs do not oppose consideration of the motion to strike and that the Court can act under Rule 12(f), on its own, without a motion.**

Plaintiffs' Memorandum of Law in Opposition ("Opposition") first attempts to divert the Court's focus by purporting to consent to GDGS' motion on Rule 24 grounds, by claiming that GDGS' request for "limited intervention" to file a Rule 12 motion is somehow a waiver of sovereign immunity. *See* Opposition at 3. However, the Court need not determine GDGS' status as an intervenor to decide the motion to strike under Rule 12(f). The Court may strike immaterial and unrelated allegations in a complaint on its own accord under Rule 12(f)—with or without consideration of whether GDGS may also seek such relief by moving to intervene under Rule 24. *See Huang v. GW of Flushing I, Inc.*, No. 17-CV-3181 (PKC) (JO), 2019 WL 145528, at *8 (E.D.N.Y. Jan. 9, 2019) (striking allegations against non-parties which served "no legitimate purpose," without deciding Rule 24 issue); *see also Jane Doe 1 v. U.S.*, No. 08-CV-80736-KAM, 2015 WL 11254692, at *3 (S.D. Fla. Apr. 7, 2015) (striking allegations pursuant to Rule 12(f) after issue first raised in non-party's Rule 24 motion).

While Plaintiffs' Opposition attempts to conflate GDGS' request to strike certain allegations with an all-purposes intervention as a party, and in so doing, they ignore that gravamen of cases cited by GDGS (like *Estate of Ungar v. Palestinian Auth.*, 2003 WL 22012475) was to thwart the promulgation of unrelated and impertinent allegations against non-parties—which may have never been raised to those courts' attention absent a motion to intervene. *See, e.g., Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20-21 (E.D.N.Y. 1996); *see Jane Doe 1 v. U.S.*, 2015 WL 11254692, at *3; *Estate of Ungar v. Palestinian Auth.*, No. 00 CV-105L, 2003 WL 22012475, at *1 (D.R.I. Aug. 4, 2003) (granting motion to strike pursuant to

Rule 12(f)); *see also Estate of Ungar v. Palestinian Auth.*, No. 00-105 L, 2003 WL 21076981, at *1 (D.R.I. Apr. 18, 2003), *aff'd*, No. 00 CV-105L, 2003 WL 22012475 (D.R.I. Aug. 4, 2003) (same).  Indeed, the purpose of striking impertinent allegations is to avoid the very satellite litigation that Plaintiffs propose in their Opposition, especially over issues that have no bearing on the facts or dispute at hand.

Plaintiffs' counsel wants to have his cake and eat it too.  First, Plaintiffs argue that "Plaintiff[s] do[ ] not oppose the intervention of Lebanon GDGS *as a party*." [Opposition at 2].  Then, Plaintiffs immediately proceed to argue that the Court should *entertain* the motion to strike and deny it. [Opposition at 4-11].  If Plaintiffs assert no objection to the Court's hearing of this Rule 12(f) issue by a nonparty—by intervention, motion or otherwise—then there is really no need for the Court to even issue a determination on the limited intervention request and it can proceed to exercise its already-existing authority to decide a motion to strike. *See* Fed. R. Civ. P. 12(f).  In other words, the Court need not take Plaintiffs' counsel's bait to engage in some procedural workaround for the absence of subject matter jurisdiction over FSIA claims against GDGS (or Lebanon, for that matter).

**B. GDGS did not waive sovereign immunity by appearing as a nonparty and requesting the Court strike impertinent allegations in the Complaint.**

As stated, GDGS is an apolitical, executive agency in Lebanon, whose role and functions are akin to the U.S. Department of Homeland Security. Accordingly, it is presumptively immune from suit in the United States, because it is "an agency of a foreign sovereign," to wit: Lebanon. *See TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 299 (D.C. Cir. 2005) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)); *see also* 28 U.S.C. § 1604. The "presumption is overcome only if the plaintiff shows that one of the exceptions to immunity provided in 28 U.S.C. §§ 1605-07 applies." *TMR Energy*, 411 F.3d at 299.  Here, although not relevant to the

3

Court's determination on the motion to strike pursuant to Rule 12(f), Plaintiffs argue that "[through GDGS,] Lebanon's voluntary appearance in this action, its request to intervene, and its application for affirmative relief adjudicating merits issues in this case constitute a waiver of sovereign immunity, and therefore there is jurisdiction over Lebanon pursuant to 28 U.S.C. § 1605(a)(1)." This is wrong as a matter of both fact and law.

Appearing in an action is not, *ipso facto*, an explicit nor implicit waiver of sovereign immunity. Further, a foreign sovereign's participation in a litigation, including by intervention, is not an implicit waiver.

Under 28 U.S.C. § 1605(a)(1), a foreign state will not be "immune from [ ] jurisdiction" in any case "in which the foreign state has waived its immunity either explicitly or by implication." Courts in this circuit have "followed the virtually unanimous precedent construing the implied waiver provision narrowly." *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8 (D.C. Cir. 2021) (quoting *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999)). The D.C. Circuit "ha[s] held that implicit in § 1605(a)(1) is the requirement that the foreign state have *intended* to waive its sovereign immunity." *Id.* (emphasis in original); *see also Ivanenko v. Yanukovich*, 995 F.3d 232, 239 (D.C. Cir. 2021). "[C]ourts rarely find that a nation has waived its sovereign immunity. . . without strong evidence that this is what the foreign state intended." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) (quoting *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir.1985)).

"[T]he requisite evidence of a foreign state's intent to qualify as an implied waiver of sovereign immunity 'in only three circumstances': (i) the state's 'executing a contract containing a choice-of-law clause designating the laws of the United States as applicable'; (ii) the state's 'filing a responsive pleading without asserting sovereign immunity'; or (iii) the state's 'agreeing

4

to submit a dispute to arbitration in the United States.'" *Khochinsky*, 1 F.4th at 8-9 (emphasis added) (quoting *Ivanenko*, 995 F.3d at 239); *see also World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 n.11 (D.C. Cir. 2002). "[C]ourts have been reluctant to stray beyond these examples when considering claims that a nation has implicitly waived its defense of sovereign immunity." *World Wide Minerals*, 296 F.3d at 1161 n.11 (internal quotation marks omitted). "The implicit waiver clause of section 1605(a)(1) has therefore been narrowly construed; courts rarely find that a nation has waived its sovereign immunity without strong evidence that this is what the foreign state intended." *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993).

GDGS's Motion simply sought to invoke the Court's inherent powers under Rule 12(f) to strike immaterial allegations from the complaint. It is axiomatic that a motion, even under Rule 12, is not a "pleading." *See* Fed.R.Civ.P. 7(a) (defining what is a "pleading"). Thus, if courts in this circuit have "been reluctant to stray beyond the[ ] example" of a "filing a ***responsive pleading*** without asserting sovereign immunity," when "when considering claims that a nation has implicitly waived its defense of sovereign immunity," then participating in a litigation by appearance or otherwise (especially where it has not been named as a party) without filing a responsive pleading, should not be considered an implicit waiver of sovereign immunity. S*ee Khochinsky*, 1 F.4th at 8 (emphasis added); *see* Fed.R.Civ.P. 7(a); *see also Inversora Murten, S.A. v. Energoprojekt Holding Co.*, 671 F. Supp. 2d 152, 155–56 (D.D.C. 2009) ("Inversora objects to only the report and recommendation's determination that because JBIC's filing was not a responsive pleading under Rule 7(a), JBIC did not waive its sovereign immunity by filing answers to the interrogatories that did not assert the sovereign immunity defense. Inversora has not presented any authority showing that this court or any other court has held that a party's

5

answers to interrogatories, whether in a normal civil action or in a garnishment proceeding, have been deemed a responsive pleading. Rule 7(a) states that the only filings that are considered pleadings are a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer. Fed.R.Civ.P. 7(a).").

Indeed, in *Foremost*, the D.C. Circuit cited approvingly several sister circuit cases which cautioned against construing any other filing or participation by a foreign state in an action *but* the filing of a responsive pleading without raising a defense of sovereign immunity as a waiver. *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990)

As noted in *Foremost*, the Seventh Circuit, in *Frolova*, pressed that:

> " . . . the example given in the legislative history—filing a responsive pleading without raising an immunity defense, . . .— demonstrates that Congress anticipated, at a minimum, **that waiver would not be found absent a conscious decision to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so. The case law evidences a reticence to find a waiver from the nature of a foreign state's participation in litigation.** For example, in *Castro v. Saudi Arabia,* 510 F.Supp. at 311–12, the court held that the defendant's failure to timely answer the complaint did not waive sovereign immunity. And in *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.,* 727 F.2d 274, 277–78 (2d Cir.1984), the court ruled that the district court did not err in finding that sovereign immunity was not waived, although the defendant never filed a responsive pleading but instead filed several motions which did not assert sovereign immunity, and a Rule 12(b)(1) motion to dismiss based on sovereign immunity was not filed until over two and one-half years after the complaint was filed.

*Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 378–79 (7th Cir. 1985) (emphasis added).

Again, while irrelevant to the issue of striking the allegations in the Complaint, GDGS did not waive sovereign immunity by filing a motion for limited intervention for the sole purpose

6

of making a motion to strike. Indeed, despite Plaintiffs' counsel protestations of the "robust" nature of the type of intervention actually sought by GDGS, this Court has indeed entertained motions for limited intervention without forcing the intervenor to be a party for all purposes. *See, e.g.*, *Turan Petroleum v. Ministry of Oil and Gas of Kazakhstan*, 406 F. Supp. 3d 1, 7-14 (D.D.C. 2019) (granting motion to intervene in a FSIA action "for the sole purpose of allowing it to file a motion to dismiss," which challenged this Court's subject matter jurisdiction as to foreign sovereign, and finding the waiver exception under 28 U.S.C. § 1605(a)(1) did not apply as to foreign sovereign's litigation conduct). Moreover, the type of limited participation by GDGS in the instant action does not meet this standard. *See, e.g.*, *Khochinsky*, 1 F.4th at 8 ("A foreign state's extradition request" to the United States is a not a waiver of sovereign immunity); *Rodriguez*, 8 F.3d at 287 (5th Cir. 1993) (voluntarily appearing in action, making several non-dispositive motions, and participating in discovery for approximately two years not a waiver of sovereign immunity); *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 202 (2d Cir.1999); *Canadian Overseas Ores Ltd. v. Compania De Acero del Pacifico*, 727 F.2d 274, 277 (2d Cir.1984) (filing motions in an action does not waive foreign sovereign immunity); *Frolova*, 761 F.2d at 377 ("Frolova's argument that the Soviet Union implicitly waived its immunity by not defending this action is also without merit"); *see also Princz v. Federal Republic of Germany*, 26 F.3d 1166 (D.C.Cir. 1994); *Amorrortu v. Republic of Peru*, 570 F.Supp.2d 916, 924 (S.D. Tx. 2008) ("Moreover, that the Republic of Peru has actively taken part in the litigation by requesting extensions and filing this Motion is insufficient to establish a waiver [under § 1605(a)(1)]".). Simply put, GDGS's request to strike does not establish a waiver of sovereign immunity and the waiver exception under 28 U.S.C. § 1605(a)(1) does not apply.

Indeed, Plaintiffs' cryptic mentioning and filing of a motion for leave to file a

"supplemental complaint" is odd, because the proposed supplemental complaint asserts no causes of action under the original exception of the FSIA that Plaintiffs employed in their operative complaint (i.e. Section 1605A, the terrorism exception), nor any claims against Defendant Iran. Thus, even assuming *arguendo* that GDGS's Motion was a waiver, Plaintiffs' proposed, supplemental complaint excises all of claims of the purported "action" that GDGS was or is (or will be) supposedly "waiving." In sum, Plaintiffs' counsel's ruminations of waiver as an end-run around actually alleging pertinent facts against Iran (the only named defendant) that are related to GDGS is a distraction, relies upon flawed logic and is unsupported by any authority.

    **C. Plaintiffs' Opposition fails to dispute the impertinence of the Complaint's scandalous allegations against GDGS, which impertinence alone warrants the Court to strike them.**

    Plaintiffs' Opposition focuses on the purported "relevancy" of their allegations against GDGS, while admitting that they have not alleged any connection between GDGS and Defendant Iran pertinent to the claims alleged in the Complaint herein—nor do they need to. *See* Opposition at 10-11. Even when given the opportunity to elaborate on the relationship between Plaintiffs' allegations regarding GDGS and the merits of their action, Plaintiffs could not and did not do so. *See* Opposition at 11. Indeed, while Plaintiffs describes the conduct of others in Lebanon in support of their claims against Defendant Iran, the Complaint states that Mr. Fahkoury was only in GDGS's "custody" for several hours over less than a single day. [Compl. at ¶ 50-55]. By ignoring the import of how the allegations of GDGS that are actually asserted do not meet the definitions of torture, hostage taking or killing, Plaintiffs' Opposition tacitly acknowledges that the disposition of their claims against Defendant Iran would not require a determination of *truth or falsity* of their allegations against GDGS. *See* Opposition at 10-11.

    Rather than segregate the discreet conduct and limited, official detention that are contained in the allegations regarding GDGS, Plaintiffs' Opposition impermissibly combines,

conflates and crosses the Complaint's facts and timeline to give the impression that everything alleged in the Complaint was conduct undertaken by GDGS—when it was not, nor was it alleged (albeit falsely) that way. Compare Compl. at ¶¶ 48-55 with Opposition at 10-11. Plaintiffs' counsel's deliberate manipulation of the timeline is the only thread keeping their alleged web of connections between Hezbollah, GDGS and Defendant Iran afloat. *Id*. Plaintiffs' reference to the Complaint's quasi-historical allegations regarding Hezbollah and Iran are wholly irrelevant to the conduct attributed in a few paragraphs to GDGS. The balance of the "connections" that Plaintiffs argue exist between Hezbollah and *any* Lebanese-state actor are conclusory and lack any evidentiary support.

Further, Plaintiffs' complaint contains scattershot references to events that have no relevance to the conduct here ("[m]oreover, the District Court for the District of Columbia found that Iran is liable under FSIA § 1605A for the very same Hezbollah Rocket Barrage that is at issue here." [Compl. ¶ 73]), and other unrelated individuals ("[t]he maiming and injury of Diana Campuzano, Avi Elishis, and Gregg Salzman caused the plaintiffs severe injury . . ." [Compl. ¶ 89]). There are no facts relating to any "Hezbollah Rocket Barrage," nor "maiming," nor to who "Diana Campuzano, Avi Elishis, and Gregg Salzman" are.

Thus, Plaintiffs' argument that some combination of facts in the Complaint describing conduct by different people, on different occasions, without any connection to Iran whatsoever, warrants retention of allegations against GDGS makes little sense. Plaintiffs cannot credibly argue that the allegations regarding GDGS have any bearing on the issues in this case. Indeed, Plaintiffs' Opposition argues that is solely based on the "opinion" of the undersigned attorneys, but provides no dispute to the authority cited by GDGS' in its opening memorandum—i.e. in *Price*, *Simpson* and *Radmanesh—* that the conduct (even as alleged) does not amount to

9

actionable activity under the terrorism exception of the FSIA. Whether or not Mr. Fakhoury's subsequent treatment when he was no longer in GDGS's custody is irrelevant to GDGS' Motion.

Finally, in a last-ditch effort to shoehorn activities by GDGS into this Complaint, activities otherwise immune from this Court's inquiry pursuant to the act-of-state doctrine[1], Plaintiffs' Opposition argues that even if Kassim Tajideen's release "was coincidental, that does not mean that the detention of Plaintiffs' decedent was not perpetrated in the first place for the purpose of securing Tajideen's release." [Opposition at 9]. However, again, Plaintiffs' counsel wants to have it both ways: in the Complaint it is alleged that the release of Kassim Tajideen *was* the quid-pro-quo, Mr. Fahkoury, in "alleged" Hezbollah-controlled custody of someone *other* than GDGS, for Mr. Tajideen, who was in U.S. custody. Now in the face of both the public denouncement of those facts, as well as the odd allegation that Hezbollah denounced and "condemned" Mr. Fakhoury's release, Plaintiffs' counsel is walking those allegations back and relies on some magical theory of intent by some party or person unnamed in the Complaint. On the contrary, it was not just public statements by the U.S. State Department that bely Plaintiffs' counsel's theory of hostage taking—rather, this Court's own records in *U.S. v. Tajideen*, 1:17-cr-46, undermine the hostage taking theory related to Mr. Tajideen's involvement. Specifically, in May 2020, Mr. Tajideen made a motion for compassionate release due, in part to the promulgation of COVID-19. *See U.S. v. Tajideen*, 1:17-cr-46 [DE 258]. The U.S. Government both opposed Mr. Tajideen's motion [DE 259] *and* later appealed this Court's order granting the same [DE 269]. Thus, it again begs the question that if Plaintiffs' theory of hostage taking was premised on a quid-pro-quo between a Hezbollah-controlled agent (other than GDGS) and the

---

[1] The act of state doctrine "precludes the courts of this country from inquiring into the validity of public acts of a recognized foreign sovereign power committed within its own territory.'" *World Wide Minerals*, 296 F.3d at 1164 (*quoting Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401(1964)).

10

U.S. Government, whether actual or expected, and the thing that both sides wanted to happen, actually happened, why would both sides oppose, denounce, condemn and appeal the release of the two prisoners? Again, it simply cannot stand—and no "hostage taking" occurred *by GDGS*, such that said allegations are immaterial and impertinent to the resolution of this action.

## **CONCLUSION**

For the reasons set forth above, GDGS respectfully requests that the Court strike the objectionable provisions *sua sponte*.

Dated: January 26, 2022

_____/s/_____
David C. Deal
The Law Office of David C. Deal, P.L.C.
P.O. Box 1042
Crozet, VA 22932
Tel: (434) 233-2727
Email: david@daviddeal.com

David D. Lin, Esq.
(*pro hac vice* forthcoming)
Justin Mercer, Esq.
(*pro hac vice* forthcoming)
Lewis & Lin, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Email: David@iLawco.com
         Justin@iLawco.com

*Counsel for the General Directorate of General Security of Lebanon*