David C. Deal
The Law Office of David C. Deal, P.L.C.
P.O. Box 1042
Crozet, VA 22932
Tel: (434) 233-2727
Email: david@daviddeal.com

David D. Lin, Esq.
(*pro hac vice* forthcoming)
Justin Mercer, Esq.
(*pro hac vice* forthcoming)
Lewis & Lin, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Email: David@iLawco.com
        Justin@iLawco.com

*Counsel for the General Directorate of General Security*

**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF AMER FAKHOURY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE ISLAMIC REPUBLIC OF IRAN, <br><br> *Defendant*. | Case No. 1:21-cv-01218-JDB |

**The General Directorate of General Security of Lebanon's
Supplemental Memorandum of Law in Further Support of
<u>Motion for Limited Invention and to Strike</u>**

The General Directorate of General Security of Lebanon ("GDGS" or "General Directorate"), a nonparty in the above-captioned action by and through its attorneys, hereby submits this supplemental memorandum in further support of its motion to strike impertinent allegations in Plaintiffs' Complaint (the "Motion"). Just last week, on February 3, 2022, Plaintiff

1

Guila Fakhoury authored the following tweet:



Accessible on the Internet at www.twitter.com/FakhouryGuila/status/1489260026464067593. (last accessed on February 4, 2022).

Here, Plaintiffs are attempting to publicly leverage the existence of the allegations in the complaint (as well as the new allegations in their "supplemental" filing) to further inflict reputational harm upon the GDGS. Thus, this Court's review of the scandalous allegations in the complaint are all the more urgent. Specific information related to and disputing the new "allegations" in Plaintiff's tweet are set forth below, and in the attached declaration of Brigadier General Youssef Medawar, Head of Intelligence Office of the General Directorate of General Security of Lebanon.

## ARGUMENT

Plaintiffs' original Complaint is and was clear in its chronology, albeit as set forth in GDGS' Motion some of those allegations were false:

1. Plaintiffs alleged that Amer Fakhoury was temporarily detained on September 12, 2019 by GDGS (a branch of Lebanon's Ministry of the Interior ["MOI"]) )(the "GDGS Custody Period").

2. Plaintiffs alleged that Amer Fakhoury was then released by GDGS to a military tribunal for formal (and allegedly disputed) criminal charges (which tribunal is a branch of Lebanon's Ministry of Justice ["MOJ"]), "the following day," i.e. on September 13, 2019.

3. Plaintiffs then alleged that Amer Fakhoury was in the MOJ's custody from September 13, 2019 until approximately March 16, 2020 (the "MOJ Custody Period").

4. Thus most, if not all, of Plaintiffs' allegations of purported wrongdoing and the subsequent development of health issues are alleged to have happened during the several-month long MOJ Custody Period, not the less-than-24-hour GDGS Custody Period.

5. As such, GDGS moved to strike as both scandalous and impertinent, not only because the allegations related to the GDGS Custody Period were insufficient, standing alone, under the FSIA, but that no credible connection between said GDGS Custody Period and Defendant Iran (the sole defendant in this action) was alleged.

However, in Plaintiffs' Memorandum of Law in Opposition ("Opposition"), Plaintiffs' counsel both manipulated the above chronology and timeline to give the false impression that GDGS was responsible for both the GDGS Custody Period (No. 1 above) *and* the MOJ Custody Period (No. 3 above). Then, Plaintiffs' counsel doubled down on this false narrative by seeking leave to file a "supplemental" complaint *after* GDGS's counsel pointed out this distinction in the Motion. In other words, the "supplemental" complaint actually changes the facts and chronology of Plaintiffs' original (and operative) Complaint.

Now, as of less than four days ago, Plaintiffs (specifically Guila Fakhoury) are using and leveraging the false and impertinent accusations regarding the GDGS Custody Period, plus their new false narrative of GDGS' responsibility for *both* the GDGS Custody Period (No. 1) *and* the MOJ Custody Period (No. 3)—as set forth in the "supplemental" complaint—to disseminate

false statements on Twitter.

As such, given Plaintiffs' recent extrajudicial conduct and statements, the urgency, of this Court's opportunity to *sua sponte* strike the allegations of the complaint regarding GDGS, is now greater. In short, to prevent and mitigate the reputational harm begat by Plaintiffs' new false allegations against GDGS (including as falsely surmised in Plaintiff Guila Fakhoury's tweet), we reiterate our request for the Court to act on the Motion to strike.

Attached hereto is more demonstrative, publicly-available proof of the false nature of Plaintiff Guila Fakhoury's February 3rd accusation that "[GDGS] @DGSG_Security kidnapped, tortured and killed [her] father [Amer Fakhoury] under direct orders from Hezbollah and #Iran."

First, there was no "kidnapping" by the GDGS because Amer Fakhoury was lawfully detained (and within 24 hours, *released to authorities other than GDGS*) on suspicion of legitimate (albeit, admittedly disputed by Mr. Fakhoury) criminal charges, including (i) his role as warden at the Khiam detention center in Lebanon, which "became the most notorious detention centre for torture and ill-treatment"; (ii) his unlawful exit from Lebanon through certain foreign countries; and (iii) accusations of rape committed in 1991 by Amer Fakhoury against a family member. *See* Declaration of Brigadier General Youssef Medawar dated February 4, 2022 (the "Medawar Decl."). The substance of the allegations of criminal charges derives from publicly available (in Lebanon) criminal prosecutorial complaints. *Id.* at ¶¶ 16-19.

Next, there was no "torture" by the GDGS because Amer Fakhoury was in good physical condition as of and on September 13, 2019–as confirmed by a medical report provided to and referenced by the U.S. Embassy in Lebanon in November 2019 (two months after the GDGS Custody Period). In a letter to the competent judge via Ministry of Foreign Affairs, the U.S. Embassy in Beirut stated as follows:

> Diplomatic Note  **No.676/19**
>
> "The Embassy of the United States of America presents its compliments to the 'Ministry of Foreign Affairs and brings to the attention of the ministry the serious deterioration in the health of US citizen Amer Fakhoury, detained in Lebanon since September 12, 2019, **and currently in the Military Hospital in Beirut**.
>
> \*   \*   \*
>
> "Since the Week of November 3, 2019, Mr. Fakhoury has required increasingly intensive medical care for severe abdominal pain. The Military Prison's head physician provided the results of his medical tests to Mr. Fakhoury's family and U.S. physician on November 13. **According to his U.S. physician**, the results show credible signs that he may be suffering from lymphoma cancer.
>
> Given the seriousness of this condition, **the U.S. doctor** recommends Mr. Fakhoury's immediate return to the United States for specialized treatment. . . . The Embassy therefore requests Mr. Fakhoury's immediate release **on humanitarian grounds**.

*See* Medawar Decl. at Exhibit D (emphasis added).

Plaintiffs' statements of physical or "torturing" threats during any interrogation during the GDGS Custody Period are false, and are, upon information and belief, pretext to posthumously invalidate his later confession (as set out in the prosecutorial complaint) of the context of his Khiam-related and other criminal charges.

Finally, there is absolutely no dispute that there was no "killing" of Mr. Fakhoury nor any "act" of "extrajudicial killing" by GDGS in which Mr. Fakhoury was a bystander. Specifically, as set forth in contemporaneous records of both the U.S. Embassy and Lebanon's MOJ (again, a separate entity than GDGS) Mr. Fakhoury was (admittedly) alive and well after he departed GDGS' care. *See* Medawar Decl. at Exhibits C and D. Thus, given Plaintiff Guila Fakhoury's February 3rd tweet inaccurately accuses GDGS of the aforementioned conduct, and the demonstrative public proof points otherwise, while at the same time having no bearing on the MOJ Custody Period (of which GDGS played no role), GDGS reiterates its request that the

Court strike the objectionable provisions *sua sponte*.

Dated: February 7, 2022

      _____/s/_____
David C. Deal
The Law Office of David C. Deal, P.L.C.
P.O. Box 1042
Crozet, VA 22932
Tel: (434) 233-2727
Email: david@daviddeal.com


David D. Lin, Esq.
(*pro hac vice* forthcoming)
Justin Mercer, Esq.
(*pro hac vice* forthcoming)
Lewis & Lin, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Email: David@iLawco.com
      Justin@iLawco.com

*Counsel for the General Directorate of General Security of Lebanon*