**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF AMER FAKHOURY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE ISLAMIC REPUBLIC OF IRAN, <br><br> *Defendant*. | Case No. 1:21-cv-01218-JDB |

**DECLARATION OF BRIGADIER GENERAL YOUSSEF MEDAWAR**
**OF THE GENERAL DIRECTORATE OF GENERAL SECURITY**

I, Youssef Medawar, Brigadier General and Head of Intelligence Office at the General Directorate of General Security of Lebanon ("GDGS"), declare under penalty of perjury under the laws of the United States of America, without waiver of sovereign immunity, that the following is true and correct:

1.      I am over 18 years of age and declare, pursuant to the provisions of 28 U.S.C. § 1746, , without waiver of sovereign immunity, the following based upon a review of publicly available Lebanese records, records of the General Directorate of General Security of Lebanon ("GDGS" or "General Directorate"), a nonparty in the above-captioned action, and/or personal knowledge of the facts set forth below.

2.      I am the Head of Intelligence Office at the GDGS, and as such, am authorized to submit this declaration on its behalf.

3.      GDGS is an apolitical, executive agency in Lebanon, whose role and functions are akin to the U.S. Department of Homeland Security. It is an intelligence agency that, *inter alia*, monitors and secures the country's borders, distributes and reviews passports and visas, and conducts preliminary investigations related to duties.

4.      I have read the portions of Plaintiffs' complaint and supplemental complaint which concern GDGS and its general director, Major General Abbas Ibrahim ("Director Ibrahim"), a decorated and award-winning diplomat. According to those provisions, GDGS and Director Ibrahim somehow are connected in the "kidnapping," "torture," and "extrajudicial killing" of Amer Elias Fakhoury a/k/a Amer Elias Al-Fakhouri ("Mr. Fakhoury"), a Lebanese expatriate and convicted  felon who had been the subject of legal, judicial, and security prosecutions in Lebanon and who traveled to Lebanon in 2019, for the first time in twenty years, with a brand-new U.S. passport.

5.      I have also reviewed a recent February 3, 2022 tweet of Plaintiff Guila Fakhoury, which "mentioned" GDGS's own twitter account, including the accusation that "[GDGS] @DGSG_Security kidnapped, tortured and killed [her] father [Amer Fakhoury] under direct orders from Hezbollah and #Iran."

6.      Each of the allegations ascribed to GDGS in the (i) complaint, (ii) proposed supplemental complaint, and (iii) Plaintiff Guila Fakhoury's February 3rd tweet are false.

7.      As such, I make this declaration in support of GDGS' application requesting (a) the Court strike the objectionable provisions of the Complaint *sua sponte*, or for (b) leave to file a motion to intervene pursuant Fed. R. Civ. P. 24, for the limited purpose of making a motion to strike, pursuant to Fed. R. Civ. P. 12(f), the false, impertinent and scandalous allegations made against GDGS (the "Motion to Strike").

**Background of GDGS**

8.      The GDGS is a Lebanese governmental agency, directly related under the oversight and direction of the Lebanese Ministry of Interior ("MOI").

9.      Unlike the Islamic Republic of Iran, Lebanon is not a designated state by the U.S., in fact Lebanon and U.S. have excellent diplomatic relations and the U.S. is represented in Lebanon with one of the biggest embassies in the region. *See U.S. Security Cooperation With Lebanon,* May 21, 2021 (https://www.state.gov/u-s-security-cooperation-with-lebanon/) (last accessed on February 4, 2022).

10.     GDGS' functions, by operation of Lebanese law, include: preparing notices and pursuits related to judicial investigations and legal orders, monitoring and enforcing entry or international travel restrictions, issuing passports and visas, and monitoring departures and arrivals of international travelers in Lebanon.

11.     It recently came to our attention that Plaintiffs doubled-down on their counsel's campaign to besmirch GDGS' name and reputation by further publicizing this case on Plaintiff Guila Fakhoury's Twitter account, including false references that appear nowhere in, but obviously rely upon the offending pleadings referenced above.

12.     Again, these allegations are false, and damaging to GDGS's reputation in the region and with the U.S. government in Lebanon.

13.     The sum of the allegations in the Complaint and Plaintiff Guila Fakhoury's February 3rd accusation against GDGS are that GDGS, specifically, "kidnapped, tortured and killed" her father, Mr. Fakhoury in Lebanon.

14.     The premise of Plaintiffs' new allegations in this regard are that (i) Lebanon is "controlled by Iran," and thus, the Hezbollah party, (ii) GDGS is controlled and directed by a particular political party, to wit: Hezbollah, and by proxy, Iran, and (iii) that GDGS' limited detention of Mr. Fakhoury in Lebanon was unlawful, physically injurious, and caused his death. This is false, scandalous and impertinent.

**Background regarding Amer Fakhoury**

      15.     First, there was no "kidnapping" by the GDGS because Amer Fakhoury was lawfully detained (and within 24 hours, *released to authorities other than GDGS*) by order of competent judge on suspicion of legitimate criminal charges, including:

     a-  His role as warden at and commander of the Khiam detention center in Lebanon, from 1982 until 2000—an infamous, non-governmental detention center that was internationally renowned for its systematic torture https://www.justsecurity.org/70272/the-us-goes-to-bat-for-lebanons-butcher-of-khiam/, https://en.wikipedia.org/wiki/Khiam_detention_center, https://www.jstor.org/stable/3012647, https://www.amnesty.org/en/wp-content/uploads/2021/06/mde150081992en.pdf, https://www.middleeasteye.net/news/lebanons-former-khiam-detainees-find-hope-accountability, and https://www.hrw.org/news/1999/10/27/torture-khiam-prison-responsibility-and-accountability;

     b-  his undocumented exit from Lebanon back in year 2000;

     c-  an absentee judgment against Mr. Fakhoury dated July 24, 1996 for 15 years of prison with hard labor in case No. 4589/1996;

     d-  an arrest order No. 2100 from a March 31, 2003 complaint alleging that Mr. Fakhoury, among others, tortured and kidnapped a Lebanese citizen in 2002; and

     e-  A warrant dated 12/12/1991 from and investigative judge, and another one from LAF nb 934 dated 02/10/1992 crime of rape, based on a personal complaint regarding accusations of rape committed in 1991 by Amer Fakhoury against a family member, whom is also the wife of an LAF sergeant.

16.     The substance of the allegations of criminal charges derives from publicly available (in Lebanon) criminal prosecutorial complaints.

17.     For example, attached hereto as **Exhibit A** is a true and correct copy of the Prosecutorial Complaint No. 14281/2019 of Judge Kanaan, seeking charges and an arrest warrant for felonies stipulated in Articles 273, 278, 569, 557 and 549 of the Lebanese Penal Code, regarding, *inter alia*, Mr. Fakhoury's role as military commander of Khiam detention center, and in orchestrating the killing and/or torture of Lebanese citizens detained there between 1986 and 1998 (the "January 2020 Prosecutorial Complaint").

18.      The January 2020 Prosecutorial Complaint also sought charges and an arrest warrant for Mr. Fakhoury, for misdemeanors stipulated in Article 285 of the Lebanese Penal Code, which stipulates that any Lebanese citizens or residents of Lebanon who enters or tries to enter Israel faces up to a year in prison. *See* Exhibit A.

19.     Attached hereto as **Exhibit B** is a true and correct copy of a 1991 Prosecutorial Complaint No. 1463/91, seeking charges and an arrest warrant for felonies stipulated article 203 of the Lebanese Penal Code, regarding an alleged rape by Mr. Fakhoury in 1991 (the "November 1991 Prosecutorial Complaint").  While included in the file is a request by the accuser to withdraw the charges because Mr. Fakhoury allegedly apologized to the victim(his cousin), the November 1991 Prosecutorial Complaint was dismissed due to a family settlement.

**Amer Fakhoury Returns to Lebanon in 2019**

20.     Prior to his 2019 entry, Mr. Fakhoury submitted requests for Lebanese passport renewal at the Lebanese Consulate in New York on two occasions, February 12, 2018, and May 14, 2018. Then, he also submitted a further request at the Lebanese Embassy in Washington, D.C., on the August 20, 2018.

21.     All requests were denied, at the time, by the Lebanese Directorate General of

General Security due to the fact that he was listed in our system as the subject of pending

legal, judicial and security prosecutions.

22.     Mr. Fakhoury was notified of this fact through the Lebanese Embassy in

Washington, D.C., and was given the choice to obtain a travel document valid for return to

Lebanon so that he can settle his legal disputes in accordance with the Lebanese law.

23.     Had there been any intention to "set him up" and lure him to Lebanon by the

GDGS, the GDGS would have approved his request for a Lebanese passport without

notifying him of the prosecutions pending in Lebanon against him. Therefore, the GDGS has

no idea why and how Mr. Fakhoury did ultimately come to Lebanon in 2019.

24.     On September 4, 2019, Mr. Fakhoury, still and then known to GDGS as a

Lebanese citizen, arrived in Lebanon in possession of a U.S. passport.

25.     Upon entry, Mr. Fakhoury's passport was flagged by our systems due to (i) his

past criminal background, (ii) suspicions on how the legal, judicial and security prosecutions

against him had been lifted, and (iii) the fact that GDGS's systems did not show how he first

departed Lebanon. Under these circumstances, his U.S passport was seized on September 4,

2019, but he was granted entry to Lebanon on the condition to show up at the GDGS several

days later so to clarify that legal requirements for his entry were met.

26.     As requested, on September 11, 2019, Mr. Fakhoury appeared at GDGS's

headquarters, where he was asked to come back the next day, due to technical issues related

to the need to complete and prepare his file.

27.     Then, on September 12, 2019, Mr. Fakhoury again returned to GDGS's

Headquarters. On  September 12, 2019, the Lebanese Attorney General's office immediately

ordered that Mr. Fakhoury's statement be taken.

28.     Then, on September 13, 2019–in full compliance with the Lebanese  Criminal

Procedures Act, after 21 hours and by the instruction of the competent prosecution authority,

Judge Peter Germanos–Mr. Fakhoury was then transferred out of GDGS's care to the custody

of military court (under the purview of the Ministry of Justice), for judicial interrogation.

29.     For sake of clarity, Mr. Fakhoury stayed in GDGS's care for only 21 hours

(from 11:00am on 12/09/2019 until 8:00am on 13/09/2019), before being transferred to the

military court, during which he was examined by the Ministry of Justice's doctors. .

30.     Indeed, as every detainee in GDGS's care, Mr. Fakhoury was fed while in

GDGS's care, and was fed the same food provided to both GDGS officers and other

detainees. This food is catered and monitored by Caritas Lebanon, a member of Caritas

Internationalis, an independent, Catholic, non-governmental organization.

**Amer Fakhoury's Condition after release from GDGS's care**

31.     In fact, after Mr. Fakhoury's presence at military court, later on that same

September 13, 2019 that he had previously been transferred out of GDGS's care, Mr.

Fakhoury was given a medical examination by Dr. Adnan Diab, under the supervision of the

Lebanese Army and the Ministry of Justice, in the presence of U.S. consular staff that met

with Mr. Fakhoury for hours after his detention.

32.     Attached hereto as **Exhibit C** is a true and correct copy of Dr. Diab's forensic

report of his examination of Mr. Fakhoury on September 13, 2019 at 3:45p.m. (almost 8

hours after he was transferred out of GDGS's care).  Dr. Diab's examination report states that

"Arrested [Mr. Fakhoury] is in good health and does not have any chronic illness or major

significant injuries." See Exhibit C.

33.     As stated above, Mr. Fakhoury left GDGS's care, but according to his

prosecution file (see Exhibit A), during the first part of the month of November 2019, two

months after his detention and arrest, Mr. Fakhoury was transferred to the Central Military

Hospital.

34.     Indeed, in a Diplomatic Note dated November 15, 2019 from the U.S.

Embassy to the Ministry of Foreign Affairs (a copy of which is attached hereto as **Exhibit**

**D**), the U.S. Embassy acknowledged Mr. Fakhoury's care at the Central Military Hospital in

Beirut as of at least November 3, 2019 for abdominal pain.

35.     Then, at the request of his family, Mr. Fakhoury was transferred to a private

hospital "Hotel Dieu" during the month of December 2019.

36.     After that, he was transferred during the month of January 2020 to Notre

Dame du Liban Hospital, where he stayed for around three months, during which his wife

and family, as well as his lawyers, in addition to representatives of the U.S. Embassy, visited

him regularly and viewed his medical file and the hospital records where he was treated.

37.     These hospital records can be reviewed to confirm the development of his

health condition during his stay *in the hospitals*, as mentioned above.

38.     Ultimately,  pursuant to Court Order dated March 16, 2020 (a copy of which is

attached hereto as **Exhibit E**), Mr. Fakhoury was officially released from Military Court

jurisdiction. No rumors were involved, knowing that several complaints were filed against

him from victims and warrants were issued against him from several courts and districts

jurisdictions.

39.     Mr. Fakhoury was in good condition on September 13, 2019, when he left

GDGS's care, and was alive when he was released from the Ministry of Justice's detention on

March 16, 2020 (six months after his one-day presence in GDGS's care).

Upon information and belief, and as set forth in their recent tweet, Plaintiffs attempt to

wrongfully blame GDGS (and GDGS alone) for Mr. Fakhoury's deteriorating health caused

by his development of cancer.

**Plaintiffs' Claims Cause GDGS Reputational Harm**

40.     Plaintiffs' claims cause GDGS reputational harm considering the allegations in question are demonstrably false.

41.     The fabrications brought up on the GDGS regarding Mr. Fakhoury being subjected to torture and ill-treatment and malnutrition are totally false. Mr. Fakhoury left the detention on September 13, 2019 in good health, like any other detainees under the General Directorate's care.

42.     Again, the General Directorate is primarily responsible for the care of foreign detainees in and international travelers to and through Lebanon. As such, false accusations of torture, harm and human rights violations are extremely damaging to GDGS's reputation.

43.     Now, that harm as come to fruition, not just by new, objectionable provisions in the supplemental complaint, but also because of the widespread, and attention-grabbing nature of this case, Plaintiffs' themselves have plucked straight from Plaintiffs' counsel's supplemental complaint those false allegations regarding GDGS.

44.     Given the Motion to Strike dispelled any of the wrongdoing associated with GDGS, we have no reason but to believe that Plaintiffs again, deliberately inserted these false and defamatory allegations against GDGS in a tweet derived from a U.S. legal pleading and proceeding that does not provide GDGS any opportunity to respond to, rebut or dispute these knowingly false claims.

45.     Indeed, GDGS Major General Abbas Ibrahim was responsible for freeing and releasing Lebanese, American and foreign hostages, including the nuns of our Lady of Maaloula Monastery on March 10, 2014[1], the Lebanese American citizen Adam Basma on April 21, 2016, the Lebanese U.S. permanent resident Nizar Zakka on June 11, 2019[2], and the

---

[1] https://www.nytimes.com/2014/03/10/world/middleeast/nuns-released-by-syrians-after-three-month-ordeal.html

[2] https://www.bbc.com/news/world-middle-east-48593391 ("Iran has released a Lebanese businessman imprisoned on charges of spying for the United States. Nizar Zakka, who is a US permanent resident, arrived in

American citizen Samuel Goodwin on July 26, 2019.[3] [4]



Goodwin (left) with top Lebanese security official Maj.
Gen. Abbas Ibrahim. The Lebanese official played a
crucial role in securing Goodwin's release from Syrian
prison.

*Elizabeth Goodwin*

46.     GDGS Major General Abbas Ibrahim was awarded the James W. Foley's

International Hostage Freedom Award in October 2020,[5]**a year after the detention of Mr**

**Fakhoury**  and he was recently awarded in Albania the "Order of the Grand Star" on October

7, 2021 as a token of gratitude and appreciation for his contribution to the return of Albanian

women and children to their country.

47.     GDGS Major General Abbas Ibrahim also adopted the Code of Conduct in the

Directorate General of General Security in cooperation and coordination with the Office of the

United Nations' High Commissioner for Human Rights.

---

Beirut on a plane with the head of Lebanon's General Security directorate, Abbas Ibrahim.").

[3] https://www.npr.org/2021/02/04/962759980/sam-goodwin-an-american-who-was-jailed-in-syria-lives-to-tell-his-harrowing-stor

[4] https://www.reuters.com/article/us-usa-hostage-syria-lebanon/lebanon-secures-release-of-american-citizen-from-syria-lebanese-security-official-idUSKCN1UL1WU?il=0

[5] https://jamesfoleyfoundation.org/awards-fellowships

48.     In sum, GDGS has never been involved in the alleged wrongdoing attributed to it against Mr. Fakhoury in the Complaint, supplemental complaint or Ms. Fakhoury's tweet.

49.     While I have the utmost sympathy for the life of the loved one Plaintiffs now seek recompense for in this action, I respectfully request (again) that such scandalous, **untrue** allegations inserted by their lawyers against GDGS be stricken by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February _07_, 2022

Youssef EL-Medawar
[ NAME ]